# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

CYNTHIA L. STRANGE, §
§
    *Plaintiff,* §
§
*versus* §   CIVIL ACTION NO. 6:13-527
§
CAROLYN W. COLVIN, §
Acting Commissioner of §
Social Security, §
§
    *Defendant.* §

## REPORT AND RECOMMENDATION

Cynthia L. Strange ("Strange") seeks judicial review of an adverse decision by the Commissioner of Social Security ("Commissioner") on her application for disability insurance benefits.[1]

## I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

---

[1]      Disability insurance benefits, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability.  Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Social Security Act, which defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).

Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence[2] supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order). Further, Congress directs courts, when reviewing acts of administrative agencies, to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

Strange, born in 1956, completed her General Educational Development ("GED") tests[3] at approximately age 20 in 1976. (T. 242). In 2006, at age 50, Strange completed vocational training and obtained a cosmetology certificate.

Between 1987 and 2003, Strange worked as a representative for a drug manufacturer and as a sales representative for a newspaper. (T. 242). After

---

[2] "Substantial evidence" is a term of art. It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

[3] GED tests are a group of subject tests which, when passed, certify that the test taker has high school-level academic skills. Generally, States award a Certificate of High School Equivalency or similarly titled credential to persons who meet the passing score requirements.

obtaining a cosmetology certificate, she worked at a JC Penney's hair salon for approximately five years. She was fired in 2011 for being abrasive and pushing a customer back into a salon chair after the customer complained about her hair color. (T. 56, 189). Shortly thereafter, she worked at another hair salon, but was fired for cutting a customer's bangs too short. (T. 56, 190).

At age 24, Strange broke her tailbone skating. She now has arthritis in her tailbone which causes discomfort when lifting more much more than 15 pounds without discomfort. (T. 51-52). While working at the salon, she lifted cases of shampoo weighing 25-30 pounds, but was uncomfortable doing so. (T. 52-53). She gets tired from standing too long and her arms tire easily. (T. 53).

In 1998, at age 42, Strange began abusing alcohol. She states this was because her son moved from New York to Texas. (T. 63-64). In 2003, she entered a rehabilitation clinic and has maintained sobriety. (T. 63). Strange regularly attends Alcoholics Anonymous ("AA") meetings, four or five meetings a week, sometimes organizing them. (T. 67).

In July 2012, her "significant other" of 20 years left her for another woman. (T. 66). At the time of the hearing, in December 2012, she was estranged from her son because she said something derogatory about his wife. (T. 65).

Reportedly in 2002, Strange was arrested for assault with a "dishtowel" and she has an arrest for driving while intoxicated, but she has no history of incarceration. (T. 315, 400).

In 2008, Strange's primary care physician referred her to Herkimer County Mental Health Services due to complaints of breakthrough symptoms of

depression, rapid mood cycling, and thoughts of suicide. (T. 398, 250). Strange reported at that time to taking psychotropic medications for almost four years. (*Id*.). She was diagnosed with bipolar illness, depression and alcohol abuse by history. (T. 251). Strange continued treatment with Herkimer County Health Services at all relevant times.

In her current application,[4] Strange alleged that she became disabled commencing on October 6, 2011, due to mental impairments, including bipolar disorder, depression, and problems with authority. (T. 183).[5] An evidentiary hearing was held before an administrative law judge, William M. Manico ("ALJ Manico"). (T. 18, 48-75). Strange attended, and testified, as did an impartial vocational expert, Dian Lee Haller, MA, CRC ("VE Haller"). (*Id*.). Strange was represented at the hearing by Kimberly MacDougall, a nonattorney representative.[6] (*Id*.). ALJ Manico received into evidence (a) testimony from Strange, (b) testimony from VE Haller, (c) forensic reports from treating sources and state agency consultants, and (d) Strange's medical treatment records. (T. 48-75).

---

[4]      This is Strange's third application for benefits (2003, 2006, and 2011); each has been denied. (T. 245).

[5]      "T." followed by a number refers to the page of the administrative record. (Dkt. No. 14).

[6]      According to her website, Ms. MacDougall is a "Social Security Claimant Representative . . . committed to providing high-quality representation for individuals with disabilities and helping claimant navigate the complex and confusing process involved in obtaining SS and SSI benefits." She possesses a level of education and experience that qualifies her to "participate in the Non-Attorney Demonstration Project," and has "successfully represented hundreds of individuals seeking disability benefits." She also is a member of the "National committee to Preserve Social Security and Medicare." *See* http://www.cnydisability.com/kimberly-macdougall-about-us.htm, (last visited July 1, 2014).

ALJ Manico denied Strange's applications in a lengthy written decision. (T. 18-31). Strange filed a request to review with the Appeals Council. (T. 14). She submitted to the Appeals Council a brief chronicling her disagreements with ALJ Manico's decision (T. 244-49). She also provided additional medical evidence. (T.494-500). The Appeals Council considered that evidence, but denied Strange's request for review.[7] (T. 1-7). Strange then instituted this proceeding *pro se.*

## III. Commissioner's Decision[8]

ALJ Manico found that Strange has severe physical and mental impairments consisting of knee pain and bipolar disorder. (T. 20). ALJ Manico further found that these impairments, while not presumptively disabling under the Commissioner's listings,[9] diminish Strange's capacity for work-related activities such that her current residual functional capacity is for work only at the medium exertional level with postural limitations. She has additional limitations caused by her bipolar disorder. Specifically, Strange can perform only unskilled work involving simple directions and instructions, and jobs where

---

[7]     The Appeals Council considered additional records dated October 11, 2012, to March 21, 2013, from Herkimer County Mental Health Services. (T. 1, 2, 5). That new evidence indicated that Strange was upset during therapy and psychiatric sessions, but that prescribed medications helped. (T. 2).

[8]     ALJ Manico utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). An explication of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[9]     The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

interactions with others are routine, superficial, and incidental to the work performed. (T. 23). She also must avoid fast-paced production work and jobs that involve dealing with the public. (*Id*.). Finally, she must restrict herself to work that requires crouching only occasionally, and never kneeling or crawling. (*Id*.).

Relying on expert testimony from VE Haller, ALJ Manico found that Strange's reduced residual functional capacity prevents her from performing her past relevant work as a cosmetologist. She can, however, perform alternative, available work as a laundry worker or folder. (T. 29-30). Therefore, ALJ Manico determined that a finding of "not disabled" was appropriate under VE Haller's testimony and the framework of Medical-Vocational Rule 203.22.[10] (T. 30). Accordingly, Strange's claim was denied. (*Id*.).

## IV. Points of Alleged Error

Strange is *pro se,* and did not file a brief in accordance with this court's General Order 18 (establishing procedures in Social Security cases). The court, therefore, directed the Commissioner to file and serve a brief supporting her decision. (Dkt. No. 18). Strange was instructed to file a reply brief. (*Id*.). Strange initially failed to comply, but the court provided additional time for her to submit a brief setting forth errors she contends were made by the Commissioner. (Dkt. No. 26).

---

[10] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. They "take into account a claimant's residual functional capacity, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

Strange acceded, and submitted the following: (1) one typed page articulating her disaffection with the justice system, bewailing her bad personal experiences, and stating that "many facts in the transcript are wrong;" (2) five reprinted pages of the Commissioner's brief with cryptic, handwritten annotations; (3) one page of the evidentiary transcript wherein ALJ Manico asked VE Haller whether a person whose stress precluded work half the time would be disabled; (4) one page showing a portion of her earnings record; and (5) a copy of an envelope addressed to the clerk of the Court and postmarked June 11, 2014. (Dkt. No. 27). Strange also submitted several typed pages of what appears to be a portion of her non-attorney representative's brief submitted to the Appeals Council (T. 246-48). (Dkt. No. 28).[11]

Much of the above constitutes, at best, a simple invitation for this reviewing court to re-weigh the evidence. For reasons stated earlier, reviewing courts lack such authority, and thus an invitation to review evidence and decide the case *de novo* must be rejected. But, liberally construed, Strange raises several points that a reviewing court properly may consider. These points are synthesized into the following alleged errors:

1. Bias and prejudice on the part of ALJ Manico;

2. Obvious factual errors in considering evidence;

3. "Cherry Picking" or so misreading or misunderstanding evidence when assessing residual functional capacity to the extent that it reflects failure to consider all relevant medical and other evidence.

4. Failure to apply "treating source rule."

5. Failure to develop an adequate administrative record.

---

[11] Each page has a footer stating "Providing professional and compassionate advocacy to the North Country." Also, in the body of the text, there appears this statement: "Both my client and I were shocked to receive the Unfavorable ALJ Decision in this case." (Dkt. No. 28, p. 4).

## V. Bias and Prejudice

### A.  Suggestion of Bias

Strange's brief states:

> [W]hat brings me to this level of court is that the judge the honorable William M Manioc [*sic*] in my opinion and in the opinion of my counsel at the time Kimberly Mac Dogall [*sic*] both strongly agree that his prejudiced in judgment and no  the facts were used in his verdict of not granting my disability at that time.

(Dkt. No. 27, p. 2).  To support this contention, Strange directs the court to this exchange while VE Haller testified during the evidentiary hearing:

> ALJ: So if a person was precluded from dealing with stress half the time, they'd not be able to hold any job down, is that correct?
>
> VE:  They would not be able to do any competitive work, your honor.
>
> ALJ: All right, do you have any questions, Ms. McDougal [*sic*] [non-attorney representative]?
>
> A:  No, your honor.
>
> ALJ: Anything else you'd like to tell me, Ms. McDougal [*sic*] ?
>
> A:  No.
>
> ALJ: Anything else you'd like to tell me, Ms. Strange?
>
> A:  No, sir.

(T. 73-74).  Around the top and side margins of this portion of the administrative transcript, Strange writes :

> [T]his [illegible [12]] last comment from the Judge *and the reason I am suing* he had my lawer [*sic*] and I convinced that we were ok with what we had given him.  There would and could have been more if he hadn't made us believe he was satisfied with the testimony we had given.

---

[12]    The case information that automatically populates the top of each page filed electronically with the court obscures part of Strange's cursive handwriting.  (T. 74).  Strange's argument, however, is discernible by the entire context.

(Dkt. No. 27, p. 8, emphasis added).  Essentially, Strange discerns trickery, prejudice, or bias in this questioning of VE Haller.  When VE Haller testified that a person dealing with stress *of such severity that it precluded work half the time* would be unable to hold down any job, and when ALJ Manico accepted that answer without further questioning, Strange believes that ALJ Manico deviously signaled that he would find Strange disabled such that further evidence or argument would be unnecessary.  She, in turn, relied on that perceived hint, and did not present further testimony.  When, to her dismay and surprise, ALJ Manico subsequently denied the application by relying on consultative evidence to the effect that Strange's stress *does not* rise to the level of severity posed in ALJ Manico's question to VE Haller, Strange deduces that ALJ Manico must have been prejudiced against her case.

## B.  *Legal Principles*

The constitutional right to due process of law requires an impartial and unbiased decision-maker in administrative proceedings.  *See Schweiker v. McClure*, 456 U.S. 188, 195–96 (1982).  There is, however, a rebuttable presumption of honesty and integrity in those who serve as adjudicators for administrative proceedings.  *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Consequently, a party advocating bias on the part of an administrative law judge bears the burden of rebutting this presumption of integrity by demonstrating a "conflict of interest or some other specific reason for disqualification." *Schweiker*, 465 U.S. at 195.  Such party must "show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment."  *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001).  Stated another way, in order to show that an administrative law judge's bias resulted in denial of a fair hearing, a claimant must show that the

administrative law judge exhibited a deep-seated favoritism or antagonism that would make a fair judgment impossible. *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119–20 (2d Cir. 1999) (alteration omitted) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))). Finally, prejudice on the part of the decisionmaker must be evident from the record, and cannot be based on speculation or inference. *Card v. Astrue*, Docket No. 3:09–cv–1102 (CFD)(TPS), 2010 WL 4643767, at *1 (D. Conn. Nov. 9, 2010) (internal citations omitted).

## C. Discussion

Strange understandably could have been encouraged by VE Haller's answer that a person suffering from stress (to a degree similar to that claimed by Strange) could not hold down a job. Strange's contention that ALJ Manico deliberately "convinced" her that she was "ok" with what she had, and thus manipulated her so that she presented no further evidence is, however, pure supposition. ALJ Manico never stated or intimated that he *agreed* that *Strange's stress* was at the level posed in his question. Fairly construed, his question simply was designed to obtain evidence applicable to a possible scenario. He only asked, hypothetically, whether a person suffering from a certain level of stress would be employable. Neither his question nor VE Haller's answer pertained to Strange directly. Further, ALJ Manico provided Strange and also her representative an opportunity to ask further questions or present additional evidence.

Viewing the bias allegation in context of the whole case, there is nothing about ALJ Manico's behavior during conduct of the hearing or in penning his decision that suggests extremism or inability to render a fair decision. There also is nothing to suggest that ALJ Manico acted with deep-seated favoritism toward the Commissioner or antagonism toward Strange. Rather, ALJ Manico

performed an impersonal, thorough and careful review of *all* evidence of record, and produced a cogently-reasoned decision. Under this circumstance, no bias has been shown. *See Whitfield v. Astrue*, 476 Fed. App'x 408, 409 (2d Cir. 2012) (summary order).

## VI. Factual Errors

*A.     Strange's Challenges*

As discussed more fully in Section VIII.*C.*, *infra*, ALJ Manico gave credence to consultative sources' medical opinions regarding limiting effects of Strange's mental and physical impairments. Strange refers the court to what she views as patently incorrect factual assertions in those reports, and believes that they undermine the decision so that it is unsupported by substantial evidence.

Strange specifies three such instances. First, she states that a psychiatric evaluation prepared by state agency examining psychologist, Dr. Michael Alexander, Ph.D., incorrectly stated that Strange began abusing alcohol at age 24, when the correct age was 42. Strange notes that a reviewing psychiatrist, Dr. H. Tzetzo, M.D., picked up Dr. Alexander's misstatement, and perpetuated it in her own report.

Second, Strange states that a state agency medical consultant, Harold Ramsey, M.D., opined in a physical residual functional capacity assessment that Strange can occasionally lift up to 50 pounds and frequently lift up to 25 pounds as well as stand and sit about 6 hours in an 8-hour workday. (T. 375, 376-83). Strange considers this patently inaccurate because she testified that she can only lift 30 pounds, is uncomfortable when doing so due to pain, and gets tired from standing too long. Her handwritten notation on portions of the

Commissioner's brief is "Don't know where they got this info." (Dkt. No. 27, p. 6).

Third, Strange takes issue with an assertion that, in an emergency room visit at Bassett Medical Center on September 12, 2012, for bipolar disorder and depression, she denied "suicidal ideation." Strange explains that "I lied."

## B.    Discussion

Dr. Alexander's statement concerning the onset age of Strange's alcohol abuse undoubtedly is incorrect, perhaps due to a transcriber's error in transposing numbers. But, whatever the reason, it is an error of no significance. Whether Strange's alcoholism commenced at age 24 or 42, she was affected by alcoholism at some earlier point, but both consultative physicians acknowledged that she has maintained sobriety since 2003, approximately eight years before her alleged period of disability due to other impairments commenced. ALJ Manico's decision, moreover, notes that Strange's alcohol dependence is in full remission, and does not interfere with her ability to function on a daily basis during the relevant period. (T. 26). Since ALJ Manico in no way based a critical and adverse sequential step finding on an erroneous understanding of the onset date or current status of Strange's alcoholism, a reviewing court can conclude confidently that the result reached by ALJ Manico was unaffected by the error, and that no substantial right of Strange was affected by it.

The same conclusion is warranted with respect to the alleged error by the state agency medical consultant. When reporting that Strange can lift up to fifty pounds occasionally and stand and sit about six hours in an eight-hour workday, the consultant stated his *opinion*, not *fact*, based on a review of Strange's

medical records. While Strange may in good faith disagree with that assessment, her disagreement does not demonstrate a patent factual error.

ALJ Manico considered Strange's testimony that she can only lift 30 pounds and gets tired when standing too long, but he found the state agency medical consultant's testimony to the contrary more credible. He acted within his discretion in doing so, because such consultants are recognized experts in evaluation of medical issues in disability claims under the Act (*see* 20 C.F.R. §§ 404.1526(c), 404.1527(f)(2)), and their opinions can be given weight, when, as here, such opinions are supported by substantial evidence. *See, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55-56 (2d Cir. 2008) (summary order). Specifically, Dr. Ramsey's opinion comports with observations made during a consultative internal medicine examination by Dr. Robi Rosenfeld, D.O., who opined that Strange's only physical difficulty was in squatting. (T. 299-302).

The emergency room notation concerning suicidal ideation was correct based on Strange's statements to treating personnel. There was no way for ALJ Manico or anyone else to know until now that Strange lied.

In sum, there is no valid reason to reverse the Commissioner's decision based on factual errors.

## VII. Misreading/Cherry-Picking Evidence

In her brief to the Appeals Council, a portion of which she filed here in response to this court's order to comply with General Order No. 18, Strange argued:

> There are multiple instances of cherry picking the record with regard to the mental health most of which date back to a time period prior to the alleged onset date in order to deny benefits to this claimant. The ALJ's

> Decision states that the claimant's mental health "improved" and cites
> location in the records that state so. However, a thorough review of the
> mental health records show that there may be improvement one week,
> and deterioration the next – not uncommon with a bipolar disorder.

(Dkt. No., 28, p. 4). To illuminate this point, Strange notes that ALJ Manico relied on opinions of consultative examining psychologist, Dr. Alexander, who, in the course of opining that Strange can appropriately deal with stress, stated that Strange is "close to her son who lives in Texas." Strange points out that additional medical and testimonial evidence before ALJ Manico (some of which was not available at the time of Dr. Alexander's review/examination) showed a subsequent "pattern of deterioration" with regard to Strange's relationship with her son, such that, by the time of the hearing, they were completely estranged.

Strange also argues that evidence before ALJ Manico reflected a similar "pattern of deterioration" with regard to her social functioning outside of family. Strange testified that in summer 2012, "Wal-Mart was going to call the police on me to get rid of me." (T. 64). Strange got into an argument with Wal-Mart about a return and became "too boisterous and loud and wouldn't leave." (T. 64-65). She further testified that she has "walked out of four dentist's office [*sic*] in the last three months because they wanted to pull her teeth out without giving her a partial at the same time. (T. 65). Strange testified that she called the last dentist a "bully," and he wanted to take "documentation." (*Id*.). She also testified that she used to run AA meetings in a jail once a month and rehabilitation meetings held in Utica once a week, but she was released from running the jail meetings because they thought she was "too emotionally – messed up." (T. 67).

ALJ Manico's decision does not mention Strange's evolving relationship with her son, nor does it recount any of the above confrontational incidents outside her family. Strange asserts that this evidence confirms her inability to deal with stress, and that ALJ Manico's failure to mention it, while relying on stale and currently inaccurate information from Dr. Alexander regarding her familial relationship, constituted consideration only of evidence that agreed with his own residual functional capacity finding.

A.    *Governing Legal Principles*

Administrative law judges are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). They cannot ignore or reject evidence favorable to a claimant – especially additional evidence from the same source relied upon for other purposes – without articulating plausible reasons illuminating why such evidence lacks credibility. *See*, *e.g., Tornatore v. Barnhart*, No. 05 Civ. 6858(GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec.12, 2006) (administrative law judge's opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Reviewing courts, therefore, reverse administrative decisions for lack of substantial evidence when they determine that an administrative law judge

"cherry picked" the evidence, *i.e.*, relied on some statements to support a conclusion, while ignoring other substantive detail to the contrary from the same source without articulating plausible reasons. "Cherry picked" decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion.[13] Substantiality of evidence must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).[14]

Somewhat related is a line of judicial thought that administrative law judges inadvertently can fail to comply with their regulatory duty to consider "all of the relevant medical and other evidence" (*see* 20 C.F.R. § 404.1545(a)(3)) when they seriously misread or misunderstand evidence. In *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010), an administrative law judge rejected a claimant's subjective testimony concerning intensity, persistence and limiting effects of his symptoms on the ground that the claimant's daily activities belied that testimony. The administrative law judge found that the claimant acknowledged that his daily activities including caring for pets, vacuuming, doing dishes and laundry, and cooking. However, the evidence actually indicated only that the

---

[13]     Substantial evidence is evidence that a reasonable mind might accept as adequate to establish a fact. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

[14]     Other cases invalidating the "cherry picking" technique are *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Hartzog v. Astrue*, No. 11-CV-6082, 2012 WL 4461749, at *6, 11 (W.D.N.Y. Sep. 25, 2012); *Mecklenburg v. Astrue*, No. 07-CV-760, 2009 WL 4042939, at *4 (W.D.N.Y. Nov.19, 2009); *Castano v. Astrue*, 650 F. Supp.2d 270, 278 (E.D.N.Y. 2009); *Backus v. Astrue*, 3:05-CV-1180 (NAM), 2008 WL 4519006, at *16 (N.D.N.Y. Sep. 29, 2008); *Thompson v. Apfel*, No. 97CIV.7697(LAK)(JCF), 1998 WL 720676, at *6 (S.D.N.Y. Oct. 9, 1998).

claimant *tried* to perform those tasks, but was unable to do so without assistance. Similarly, the administrative law judge found that the claimant testified that he could perform household chores, but failed to note that such testimony pertained to a *different time period* to that at issue. The appellate court then held:

> Because the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider "all of the relevant medical and other evidence," . . . and cannot stand.

(*Id.*)

B.    *Application and Discussion*

A classic case of cherry-picking evidence occurs when administrative law judges credit information consistent with their findings while ignoring or discrediting inconsistent information *from the same sources* without providing plausible reasons. Strange's challenge does not implicate this type of error. ALJ Manico gave significant weight to the entire consultative opinions expressed by Dr. Alexander and Dr. Tzetzo. He did not rely on portions consistent with his residual functional capacity finding while ignoring inconsistent portions.

Strange's challenge more nearly fits the related concept of failure to consider all relevant evidence. It is important to note, however, that administrative law judges are not required to recite or summarize in their decisions every item of evidence they consider. *See Brault v. Social Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted") (internal quotations and citation omitted);

Just as importantly, the mere fact that a specific portion of evidence is not *discussed* in a decision does not mean that it was not *considered*. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). Rather, courts cipher decisions in the whole to determine whether they reflect analytical and substantive compliance with governing law, and are supported by substantial evidence.

ALJ Manico clearly considered Strange's subjective testimony because he recited much of it in his decision. While he did not summarize the evidence regarding Strange's impaired relationship with her son, or the Wal-Mart, dentists' offices, and AA incidents, a reviewing court reasonably can infer that he considered that evidence and took it into account when assessing Strange's residual functional capacity. That assessment states that Strange cannot work in jobs requiring that she deal with the public, and further states that she must confine her employment to low-stress, unskilled jobs where interactions with coworkers are routine, superficial, and incidental to work performed. These limitations are *greater* than opined by the state agency consultative medical sources, and they pointedly address and accommodate Strange's subjective testimony regarding her deteriorated capacity for dealing with stress.

In sum, ALJ Manico did not err by cherry picking only medical evidence favorable to his findings, or by misreading subjective testimony to the extent that a reviewing court could conclude that he failed to consider all relevant medical and other evidence.

# VIII.  Treating Source Rule

Strange complains that ALJ Manico relied upon opinions from "Drs that spent 2 mins with me instead of what my Dr. of years had said." (Dkt. No. 27, p. 8).  Liberally construed, this complaint invokes the "treating source rule" described below.

## A.    *Treating Sources*

Administrative law judges must give controlling weight to opinions of "treating sources"[15] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[16]  The reason for this "treating physician rule" is both obvious and sound.  The Commissioner expresses it well in her regulation:

> [T]reating sources . . . are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*See* 20 C.F.R. § 404.1527(c)(2).  The Commissioner, however, need not grant "controlling weight" to a treating physician's opinion as to the ultimate issue of disability, as this decision lies exclusively with the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("treating physician's statement that the claimant is disabled cannot itself be determinative").

---

[15]    *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[16]    *See* 20 C.F.R. § 404.1527(c)(2).

For good cause, an administrative law judge can decline to give controlling weight to treating source opinion with respect to severity of impairments and how they affect individuals' ability to function. But such opinions cannot be ignored. Rather, the degree of weight to which such evidence is entitled is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[17]

An administrative law judge must always give good reasons for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). To be "good," those reasons must be supported by the evidence in the case record, and sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to a treating source's medical opinion and the reasons for that weight. SSR 96-2p, TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188, at *5 (SSA July 2, 1996). This requirement is imposed to assist a court's review of the Commissioner's decision and to let claimants understand dispositions of their cases. *Smith v. Colvin*, No. 11–CV–4802 (NGG), 2013 WL 6504789, at *9 (E.D.N.Y. Dec. 11, 2013) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

B.    *Other Sources*

Administrative law judges often consider medical opinions from sources other than treating physicians. The Commissioner characterizes these sources as "acceptable" (licensed physicians (medical or osteopathic doctors),

---

[17]    *See* 20 C.F.R. § 404.1527(c).

psychologists, optometrists, podiatrists, and speech-language pathologists)[18] and "other" (ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists).[19] Evidence from these sources can be considered when determining severity of impairments and how they affect individuals' ability to function. The degree of weight to be given such evidence is determined by applying the same regulatory factors mentioned in the preceding section.[20]

## C.   *Medical Source Opinions*

ALJ Manico received medical opinion evidence from several sources. Evidence most favorable to Strange came from her treating psychiatrist, Dr. Richard Zoppa, M.D., and her therapist, Bonnie Keller, RN.[21]  Evidence less favorable came from state agency examining medical consultant, Dr. Robi Rosenfeld, D.O., state agency nonexamining medical consultant, Dr. Harold Ramsey, M.D., state agency consulting examining psychologist, Dr. Michael Alexander, Ph.D., and state agency consulting nonexamining psychiatrist, Dr. H. Tzetzo, M.D.

---

[18]     20 C.F.R. § 404.1513(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources."  20 C.F.R. § 404.1502.

[19]     20 C.F.R. § 404.1513(d); SSR 06-03p, TITLES II AND XVI:  CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

[20]     *See* SSR 06-03p, 2006 WL 2329939, at *4 ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" ).

[21]     Although Strange is/was Nurse Keller's patient, Nurse Keller was not a "treating source" because nurses are not "acceptable medical sources." Therefore, Nurse Keller's opinions were not entitled to presumptive controlling weight.  *See Bushey v. Colvin*, 552 Fed. App'x 97, 98 (2d Cir. 2014) (summary order).

Dr. Zoppa opined in a treatment note dated December 11, 2011, that Strange was "having a difficult time and in my opinion she will not be able to continue to work for gainful employment. Certainly not on a full time level where she needs to in order to support herself." (T. 290). Dr. Zoppa also cosigned a "Medical Source Statement (mental)" authored by Nurse Keller on April 19, 2012, thereby indicating his concurrence with Nurse Keller's observations. (T. 371).

Nurse Keller's medical source statement (T. 370-71) is a check-the-box form of undetermined origin.[22] It contains several broad categories under which a person completing the form rates a degree of limitation exhibited by the person being evaluated. The rating options are "None/Mild," "Moderate," "Marked" and "Extreme." A definitional portion equates a given limitation rating with a percentage of how much time such limitations are present in an 8-hour workday. (T. 370).[23]

Under the broad category "making occupational adjustments," Nurse Keller checked two boxes stating that Strange has "marked" limitations in "dealing with the public" and "dealing with stress." (T. 370). The remaining boxes in this area (*i.e.*, follow rules, relate to family & acquaintances, use of judgment, relate to authority figures, function independently, and maintain attention/concentration) are checked as "moderate." (*Id.*). It also states that Strange's treatment relationship began in 2008, her diagnoses are bipolar

[22] The form does not bear any indicia of being an official social security form.

[23] For example, a rating of "moderate" means the "significantly limited but not precluded from performing the activity. Limitations are present for 26-50% of the time in an 8-hour workday," according to the form. (T. 370). A rating of "marked" means "effectively precluded from performing the activity in a meaningful manner. Limitations are present for 51-75% of the time in an 8-hour workday." (*Id.*)

disorder, depressed and alcohol abuse disorder, by history, that Strange was confrontational at her last job, and that she does not manage stress well even when on medication.  (T. 371.)

D.    *Weighting of Medical Evidence Regarding Mental Limitations*

ALJ Manico did not afford controlling weight to Dr. Zoppa's ultimate issue opinion that Strange is unable to continue work.  He declined because Dr. Zoppa's complete disability opinion conflicted with counseling notes reflecting improvement with therapy, with treatment notes indicating that medications were effective, and with lack of clinical observations of mental limitations as severe as opined.

ALJ Manico also discounted both Dr. Zoppa's opinions and Nurse Keller's opinions proffered on Nurse Keller's medical source statement due to the form's offbeat and intrinsically unreliable format.  Additionally, ALJ Manico noted that there were no objective diagnostic findings supporting opinions expressed thereon, and that Strange's daily activities belied these medical sources' forensic opinions. ALJ Manico, therefore, gave little weight Dr. Zoppa's and Nurse Keller's opinions expressed on the form.

Dr. Alexander, a state agency examining psychologist, after conducting a psychiatric evaluation, diagnosed Strange with dysthymic disorder and alcohol abuse, in sustained full remission.  (T. 294-97).  He further opined that Strange can follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform more complex tasks independently, make appropriate decisions, relate adequately with others, and can appropriately deal with stress.  (T. 296).  Dr. Tzetzo, a state agency nonexamining psychiatrist, reviewed the longitudinal mental health  evidence of record, and completed a

psychiatric review technique form as well as a mental residual functional capacity assessment. (T. 303-316, 490-93). Overall, Dr. Tzetzo opined that although claimant may have problems returning to her past cosmetology work, she should be able to understand and follow work directions in a work setting (with low public contact), maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decision in a work setting (with low public contact). (T. 315). ALJ Manico afforded the opinions of Dr. Alexander and Dr. Tzetzo significant weight, noting their findings as consistent with the mental status exam as well as consistent with Strange's self-reporting that she enjoys attending AA, being with her son, and is able to care for herself and lives on her own. (T. 28).

## E.  *Application and Discussion*

ALJ acted within his discretion and within the bounds of applicable law when declining to give treating psychiatrist Dr. Zoppa's opinions controlling weight. A treating physician's statement on the ultimate issue of disability cannot itself be determinative, as that issue is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Moreover, since Dr. Zoppa's counseling notes indicated Strange's overall mood had improved, ALJ Manico reasonably could discount Dr. Zoppa's statement that Strange could not engage in full-time employment. Dr. Zoppa noted on several occasions that Strange benefitted from medication. (T. 290-91, 321, 498). Further, Dr. Zoppa noted that during therapy, Strange became less tense, less irritable, and settled down. (T. 321). Additionally, on other occasions, Dr. Zoppa opined that her reaction was "situational" and she was otherwise doing well for the most part. (T. 321).

As for Nurse Keller's medical source statement, ALJ Manico had valid reasons for discounting the opinions expressed thereon. First, a fill-in-the-blank medical source statement, is only "marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran*, 362 F.3d at 31 n.2; *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Second, ALJ Manico articulated several other reasons for discounting Nurse Keller's (and, to the extent he co-signed, Dr. Zoppa's) medical source opinions. ALJ Manico noted that (1) Nurse Keller's findings are not supported by other medical evidence, particularly mental examination findings by consultative psychologist, Dr. Alexander (Factors 3, 4);[24] (2) there is no evidence that any test was done to corroborate the opinions or if Strange was even questioned about the restriction on the form to get her opinion (Factor 6); (3) Strange's activities of daily living exhibit greater functional capacity than the findings on the form (Factors 3, 4, 6);[25] and (4) the definitional portion of the unofficial form used by Nurse Keller is "superfluous and appears to serve no other purpose than to potentially confuse" (Factor 6)."[26]

---

[24] In the psychiatric examination with Dr. Alexander, Strange was cooperative and dressed appropriately. Her gait, posture, and speech were normal. Her affect was full range and mood was neutral. She was oriented x3, attention and concentration were intact, recent and remote memory skills were intact, cognitive functioning was average, fund of information was appropriate, and insight and judgment were good. (T. 294-97).

[25] ALJ Manico noted that Strange reported having a few close friends, a good relationship with her son, and enjoyed attending her AA meetings. (T. 26).

[26] ALJ Manico considers the definitional portion of the form misleading and confusing for reviewers. (T. 27). Additionally, ALJ Manico declares that there is no way to quantify restrictions in the precise manner on the form without engaging in speculation. (*Id.*).

Because ALJ Manico set forth sufficient reasons for discounting opinions of Strange's treating psychiatrist and her therapist, Nurse Keller, his decision was not erroneous with respect to weighting of medical evidence.

## IX.  Adequacy of Record

When evaluating medical opinions expressed by treating psychiatrist, Dr. Zoppa and Nurse Keller, as expressed in an unconventional medical source statement form that each signed, ALJ Manico commented that the form's definitional language (described, *supra*, in Section VIII.*C.* and note 24) is "superfluous and appears to serve no other purpose then to potentially confuse." (Dkt. No. 28, pp. 3-4).

Strange extrapolates from that statement her conclusion that ALJ Manico discounted Dr. Zoppa's and Nurse Keller's opinions because they were confused. Strange then argues that "[i]f the Administrative Law Judge believed that the treating source was somehow confused by these definitions as stated in his Decision, then the onus would have been on him to contact the treating source and seek to clarify his opinion." (*Id.*, p. 4).  The implication of this argument is that ALJ Manico failed to comply with his duty to develop an adequate evidentiary record.

*A.  Duty to Develop Record*

Unquestionably, social security claimants possess a right to administrative records adequately developed to the point that fair and informed decisions can

be reached thereon.[27]  And, when evidence in hand is inadequate to determine whether a claimant is disabled, regulations require that administrative law judges re-contact treating physicians or other medical sources and request additional records.[28]

Failure to develop a record adequately is an independent ground for vacating an administrative law judge's decision.  *See Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").  An affirmative obligation to develop an administrative record does not extend to infinity, however, and is not without limit.  *See Guile v. Barnhart*, No. 5:07-cv-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010).   The Commissioner's implementing regulation recognizes that further development of the record is unnecessary, and administrative law judges may make determinations based upon existing evidence when it is sufficient to determine whether a claimant is

---

[27]     In the Social Security Act, Congress imposes on the Commissioner an affirmative duty to develop the medical record fully:

> In making any determination with respect to whether an individual is under a disability ..., the Commissioner of Social Security ... shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability.... [T]he Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C.A. § 423(d)(5)(B).

[28]     *See* 20 C.F.R. §§ 404.1512(e), 404.1520(c); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (when there is an inadequate medical record, an administrative law judge must *sua sponte* seek additional information); *Devora v. Barnhart*, 205 F. Supp.2d 164, 172-73 (S.D.N.Y. 2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician.").

disabled. *See* 20 C.F.R. § 404.1520b(a). Likewise, reviewing courts hold that administrative law judges are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also Hart v. Commissioner of Soc. Sec.*, No. 5:07–CV–1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

## B. *Application and Discussion*

Strange's argument is premised on a misinterpretation of ALJ Manico's rationale for rejecting treating source opinion. ALJ Manico did not find that Dr. Zoppa and Nurse Keller were confused in their opinions.[29] Rather, he concluded that the form on which they expressed their opinions was inherently unreliable due to its definitional deficiencies. Further, ALJ Manico expressed other reasons for rejecting their opinions unrelated to the form.

While ALJ Manico could have submitted an official social security form used to assess mental residual functional capacity to Nurse Keller and/or Dr. Zoppa, he did not err by acting on evidence in hand. He had Strange's medical treatment records, and he received and considered medical opinion evidence from two other competent medical sources.[30] Strange does not identify, nor does the court's independent examination disclose an "obvious gap" rendering the existing medical record from those sources inadequate to determine whether Strange was disabled during the discrete period at issue.

---

[29]    Strange concedes that the form did not confuse her treating sources, maintaining that "the additional notes made on page 2 of the treating source assessment...suggest that there was no confusion on this subject."(Dkt. No. 28, p.4).

[30]    ALJ Manico relied upon the psychiatric examination conducted by consulting psychologist, Dr. Alexander (T. 294-97) as well as a mental functional capacity determination and longitudinal review of the evidence of record made by state agency psychiatrist, Dr. Tzetzo (T. 303-16, 490-93).

Careful review discloses that ALJ Manico developed a record sufficient to permit an informed finding as to a disability determination. Strange's argument to the contrary should be rejected.

## X. Recommendation

The Commissioner's decision should be AFFIRMED, and Strange's request to remand this action should be DENIED.

## XI. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___4___ day of _____July_____ 2014.

_Earl S. Hines_

Earl S. Hines
United States Magistrate Judge